**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: APPLICATION OF CA INVESTMENT (BRAZIL) S.A. FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Misc. Case No. 19-MC-00134-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF ELDORADO BRASIL'S MOTION TO VACATE THE COURT'S ORDER AND TO QUASH SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS FOR USE IN A FOREIGN PROCEEDING**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................... 1

FACTUAL BACKGROUND .................................................................. 3

  A.   J&F Agrees To Sell Eldorado Brasil To CA, But CA Fails To Satisfy Conditions Precedent Under The Share Purchase Agreement .................. 3

  B.   CA Agreed To Submit Its Claims To Arbitration ................................... 4

  C.   Brazilian Courts Refer CA's Claims To Arbitration And CA Commences Arbitration ................................................................. 5

  D.   Brazilian Courts Deny CA's Request To Enjoin The Eldorado Bond Offering And Refer That Dispute To Arbitration ................................... 5

  E.   CA Files Two Proceedings In Singapore That Are Now Moot and Subject to Mandatory Arbitration ............................................. 5

  F.   CA Seeks To Enjoin Bond Offering In The ICC Arbitration And Agrees to Case Management And Document Production Order ........................ 6

  G.   Despite Brazilian Orders Compelling Arbitration And Parties Taking Steps To Resolve Such Matters In Arbitration, CA Launches New Action In Austria .... 7

  H.   CA Files Section 1782 Applications Requesting Duplicative, Broad, And Privileged Discovery ................................................. 7

ARGUMENT ............................................................................ 8

  I.   Petitioner Fails to Satisfy the Statutory Requirements .......................... 8

    1.   The Evidence Is Not For Use In Foreign Tribunals ........................... 9

      a.   The ICC Arbitration Is Not A Foreign Tribunal Under Section 1782 ... 9

      b.   The Brazilian Judicial Proceedings Are All Extinct ..................... 12

      c.   The Singaporean Proceedings Are Moot And In Any Event Subject To Mandatory Arbitration .................................... 13

      d.   The Austrian Injunction Has Been Suspended ........................... 14

    2.   Respondents Are Not "Found" In This District ............................. 14

  II.   The *Intel* Factors Weigh Heavily in Favor of Vacating the Order and Quashing the Subpoenas .................................................. 16

    1.   *Intel* Factor 1: Evidence Is Already Within The Jurisdiction Of Foreign Tribunals ..................................................... 16

    2.   *Intel* Factor 2: Foreign Tribunals Will Not Be Receptive To Evidence Obtained Here ....................................................... 18

    3.   *Intel* Factor 3: The Application Seeks To Circumvent Both Foreign And U.S. Laws And Policies ............................................. 19

4.    *Intel* Factor 4: The Application Is Overly Intrusive And Burdensome .... 21

III.    The Subpoenas Should Be Quashed And Order Vacated Because The Application Was Made In Bad Faith And To Harass Eldorado Brasil .................23

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Application of Medway Power Ltd.*,
   985 F. Supp. 402 (S.D.N.Y. 1997) ............................................................. 10, 20

*Aventis Pharma v. Wyeth*,
   No. M-19-70, 2009 WL 3754191 (S.D.N.Y Nov. 6, 2009) ................................... 19

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ....................................................................... 9, 24

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP*,
   798 F.3d 113 (2d Cir. 2015) ..................................................................... 8, 12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..................................................................................... 15

*Ex rel Application of Winning (HK) Shipping Co. Ltd.*,
   No. 09-22659-MC, 2010 WL 1796579  (S.D. Fla. Apr. 30, 2010) ......................... 11

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
   633 F.3d 591 (7th Cir. 2011) ......................................................................... 24

*In re Accent Delight Int'l Ltd.*,
   Nos. 16-MC-125 (JMF), 18-MC-50 (JMF),
   2018 WL 2849724 (S.D.N.Y. June 11, 2018) ................................................... 24

*In re Apotex Inc.*,
   No. M12-160, 2009 WL 618243 (S.D.N.Y. Mar. 9, 2009) ................................... 23

*In re Application of Grabski Inwestycje Finansowe Sp. z.o.o.*,
   No. M19-117, 2004 WL 1234046 (S.D.N.Y. June 2, 2004) ................................. 13

*In re Asia Mar. Pac. Ltd.*,
   253 F. Supp. 3d at 705 (S.D.N.Y. 2015) .................................................... 23, 24

*In re Caratube Int'l Oil Co., LLP*,
   730 F. Supp. 2d 101 (D.D.C. 2010) ............................................................... 19

*In re China Petrochemical Dev. Corp.*,
   No. 3:17-CV-02138(SRU), 2017 WL 10841339 (D. Conn. Nov. 28, 2017) ............ 12

*In re Del Valle Ruiz*,
   342 F. Supp. 3d 448 (S.D.N.Y. 2018) ...................................................... 15, 24

*In re Ex Parte Application of Qualcomm Inc.*,
   162 F. Supp. 3d 1029 (N.D. Cal. 2016) .......................................................... 23

*In re Godfrey*,
   526 F. Supp.2d 417 (S.D.N.Y. 2007) ............................................................. 15

*In re Grupo Unidos Por El Canal, S.A.*,
   No. 14-MC-00226-MSK-KMT, 2015 WL 1810135 (D. Colo. Apr. 17, 2015) ......... 11

*In re Grynberg*,
   223 F. Supp. 3d 197 (S.D.N.Y. 2017) ............................................................ 23

*In re Hulley Enters.*,
   358 F. Supp. 3d 331 (S.D.N.Y 2019) ............................................................. 25

*In re IPC Do Nordeste, LTDA*,
   No. 12-50624, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) ..................... 24, 25

*In re King.com Ltd.*,
   No. 16-MC-80070-JCS, 2016 WL 4364286 (N.D. Cal. Aug. 16, 2016) .......................... 13, 14
*In re Kleimar N.V.*,
   220 F. Supp. 3d 517 (S.D.N.Y. 2016) .................................................................................... 11
*In re Kreke Immobilien KG*,
   No. 13 Misc. 110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ...................................... 17, 20
*In re Metallgesellschaft AG*,
   121 F.3d 77 (2d Cir. 1997) .............................................................................................. 16, 24
*In re Microsoft Corp.*,
   428 F. Supp. 2d 188 (S.D.N.Y. 2006) .............................................................................. 16, 17
*In re OOO Promnefstroy*,
   No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) .......................................... 17
*In re Operadora DB Mexico, S.A. de C.V.*,
   No. 609-CV-383-ORL-22GJK, 2009 WL 2423138 (M.D. Fla. Aug. 4, 2009) ...................... 12
*In re Pan Am Corp.*,
   161 B.R. 577 (S.D.N.Y. 1993) .............................................................................................. 22
*In re Pinchuk*,
   No. 14-CIV-20047, 2014 WL 1328484 (S.D. Fla. Mar. 31, 2014) ........................................ 13
*In re RSM Prod. Corp.*,
   No. 17-mc-213, 2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018) .......................................... 18, 24
*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017) .................................................................................... 15
*In re Scott Paper Co. Sec. Litig.*,
   145 F.R.D. 366 (E.D. Pa. 1992) ............................................................................................ 22
*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) .................................................................................................... passim
*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018) .............................................................................. 14, 15, 16, 25
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................................. 21
*Nat'l Broad. Co. v. Bear Stearns & Co., Inc.*,
   165 F.3d 184 (2d Cir. 1999) .............................................................................................. 9, 10
*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
   109 F.3d 850 (2d Cir. 1997) .................................................................................................. 20
*Republic of Kazakhstan v. Biedermann Int'l*,
   168 F.3d 880 (5th Cir. 1999) .......................................................................................... 10, 12
*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004) .................................................................................................... 15
*United States v. Diaz*,
   122 F. Supp. 3d 165 (S.D.N.Y. 2015) .................................................................................... 12

**Statutory Authorities**
28 U.S.C. § 1782 ...................................................................................................... passim
Federal Arbitration Act, 9 U.S.C. §2 ........................................................................…... 21

**Rules and Regulations**
Fed. R. Civ. P. 26 .................................................................................................................. 21
Fed. R. Civ. P. 45 .................................................................................................................. 22

Intervenor Eldorado Brasil Celulose S.A. ("Eldorado Brasil") submits this Memorandum of Law in support of its Motion to Vacate the Court's March 21, 2019 order ("Order") granting CA Investment (Brazil) S.A. ("CA")'s Section 1782 Application ("1782 Application"), and to Quash the subpoenas ("Subpoenas") Petitioner CA issued to Respondents White & Case LLP ("White & Case"), BDO USA, LLP ("BDO USA"), The Bank of New York Mellon Corporation ("BNY"), Moody's Investors Service, Inc. ("Moody's") and Fitch Ratings, Inc. ("Fitch", and collectively "Subpoena Recipients") pursuant to 28 U.S.C. § 1782.

## PRELIMINARY STATEMENT

The 1782 Application is CA's latest front in a global litigation crusade seeking to strong-arm Eldorado Brasil and J&F Investimentos S.A. ("J&F")—Eldorado Brasil's controlling shareholder—to relinquish control of the company on terms inconsistent with the parties' share purchase agreement ("SPA"), which provides for arbitration as the exclusive forum for dispute resolution. Encouraged by orders obtained *ex parte* in the United States and abroad, CA multiplied its worldwide efforts to litigate a dispute that squarely belongs in a pending arbitration in Brazil. Foreign courts agree: the São Paulo Court of Appeals has already compelled arbitration of CA's claims, and an Austrian court has promptly suspended CA's injunction in light of, *inter alia*, similar relief being sought by CA in arbitration.[1] Undeterred by these decisions and despite having agreed to a discovery schedule in the arbitration, CA continues to seek U.S.-style discovery of whatever documents the Subpoena Recipients may have obtained from Eldorado Brasil, the real

---

[1] Since filing its 1782 Application, CA initiated duplicative injunction proceedings in Austria and sent a letter to Eldorado's counsel on April 23, 2019 stating that any discovery obtained by CA in any of the pending Section 1782 proceedings for use in foreign proceedings in Brazil and Singapore also will be used in the foreign proceeding in Austria "as well as any other related foreign proceeding that might be commenced."

1

party in interest and a party opponent in the foreign proceedings.  Section 1782 assistance is not appropriate nor permitted in these circumstances.

As an initial matter, none of the foreign proceedings qualify for assistance under Section 1782.  Under controlling Second Circuit precedent, the exclusive forum for any foreign dispute under the SPA—the arbitration pending before the International Chamber of Commerce ("ICC Arbitration")—does not qualify as a "foreign tribunal."  Nor do the Brazilian, Austrian, or Singaporean proceedings as they have either been terminated, suspended, or mooted.  Accordingly, the foreign courts will not be receptive to any new evidence obtained here.

Further, although the 1782 Application was filed against third parties, the real target of the discovery is Eldorado Brasil; the Subpoenas do not generally seek documents actually prepared by these third parties or uniquely in their possession.  For each Subpoena, CA essentially seeks whatever documents the third parties might have obtained from Eldorado Brasil.  As a result, the person from whom discovery is sought is not "found" within this District, which is independently fatal to the 1782 Application.[2]

Courts also routinely deny Section 1782 applications to take discovery from a party opponent before a foreign tribunal already empowered to order appropriate discovery, as is the case here.  The documents sought are within the reach of the foreign tribunals and thus accessible absent Section 1782 aid.  In fact, CA has already agreed to a procedure for the exchange of documents in the ICC Arbitration, and the procedural order entered in the ICC Arbitration sets out a discovery schedule and the rules governing document production.  Importantly, those rules require any third-party discovery request to be approved at the discretion of the arbitral tribunal.

---

[2]   Further, BDO USA does not "reside" nor "is found" in New York for purposes of Section 1782.  *See infra* at 15-16.

CA obtained no such approval here.  Moreover, the 1782 Application conceals an attempt to circumvent policies of both foreign nations and the United States, including the enforcement of arbitration agreements.

Finally, the Subpoenas would impose an undue burden and intrusion upon the Subpoena Recipients, including Eldorado Brasil's counsel, especially because they seek documents that are privileged or that could be obtained more efficiently in the foreign proceedings.  Denying this duplicative and unnecessary discovery to CA would simply hold the parties to their contractual bargain regarding arbitration, and direct that discovery be taken in that context.  This result fully comports with the efficiency and comity rationales underpinning Section 1782.

Accordingly, Eldorado Brasil respectfully requests that the Court vacate its Order and quash the Subpoenas, protecting Respondents from a burdensome and intrusive subpoena compliance effort and preventing CA from abusing Section 1782 to the prejudice of the parties' agreement to arbitrate their disputes.

## FACTUAL BACKGROUND

### A.   J&F Agrees To Sell Eldorado Brasil To CA, But CA Fails To Satisfy Conditions Precedent Under The Share Purchase Agreement

Pursuant to an SPA dated September 2, 2017 (and later amended), J&F and others agreed to sell their shares in Eldorado Brasil to CA.  Carneiro Decl. ¶¶13-14.  To complete the sale, however, CA was required to satisfy conditions precedent, including the release of certain guarantees and other collateral provided by J&F in favor of Eldorado Brasil's creditors.  *Id.* ¶¶20-24; *see also* Passos Decl. ¶10.  As CA failed to satisfy those conditions by the required deadline provided in the SPA, J&F terminated the SPA and called off the sale.  Carneiro Decl. ¶24.  CA subsequently initiated a series of legal actions in an attempt to, *inter alia*, close the sale.

**B.      CA Agreed To Submit Its Claims To Arbitration**

Each of CA's ongoing disputes originates from a dispute over whether CA is entitled to purchase all of J&F's shares in Eldorado Brasil.  These disputes belong squarely in the ICC Arbitration.

The SPA contains a broad dispute resolution provision requiring any dispute arising out of or relating to the SPA to be "exclusively and conclusively settled by arbitration" before the ICC, in São Paulo, Brazil, applying Brazilian law.  Carneiro Decl. Ex, 3 (SPA) §§ 21.3.1, 21.3.3.  The clause further provides that *any* interim measures, "including . . . preliminary injunctions" must be *exclusively* handled by the courts of the City of São Paulo and that once the arbitral tribunal is constituted, "the arbitral tribunal shall have sole jurisdiction" to consider applications for [such relief]."   SPA §§ 21.4-21.4.1; Yarshell Decl. ¶55 (noting that discovery requests in aid of arbitration are interim measures under Brazilian law).

J&F and CA are also parties to the "Shareholders' Agreement of Eldorado Brasil Celulose S.A." (the "SHA").  Carneiro Decl. ¶27 & Ex. 6 (SHA).  The SHA, dated the same day as the SPA, was a companion agreement to the SPA and set forth "the rights and obligations of the Shareholders in relation to transfers of shares of the Company, to voting rights and to the governance of the Company."  SHA at Recital D.  The SHA's dispute resolution provisions are virtually identical to those in the SPA, and provide for exclusive and final resolution of any disputes arising under the SHA in arbitration before the ICC in São Paulo.  SHA § 14.[3]

---

[3]   Eldorado's bylaws, to which CA is bound as a shareholder, also contain an arbitration clause by which "[t]he Company, its shareholders, directors/managers and supervisory board members undertake to submit to arbitration all and every dispute or controversy that could arise between them" relating to "the Bylaws, the provisions set forth by [Brazilian] Corporate Law, . . . and other rules applicable to the capital markets in general."  Carneiro Decl., Ex. 8 (Bylaws, Art. 35).  The bylaws also call for arbitration before a separate private arbitral body, applying Brazilian law, in São Paulo.  *Id.*

**C.**    **Brazilian Courts Refer CA's Claims To Arbitration And CA Commences Arbitration**

In an effort to salvage a deal, CA sought emergency injunctive relief before a Trial Court in São Paulo, Brazil.  Carneiro Decl. ¶29.  After several rounds of appeals, the Trial Court on remand enforced the parties' arbitration clause in the SPA, confirmed that the dispute be resolved in ICC arbitration, and closed the case.  *Id.* ¶¶30-31.  On September 5, 2018—six months before CA filed the 1782 Application—CA filed its request for arbitration against J&F and Eldorado Brasil.  *Id.* ¶33.  On October 15, 2018, Eldorado and J&F filed their responses to CA's request.  *Id.* ¶35.  On March 21, 2019, the ICC Arbitral Tribunal was constituted and subsequently issued a case management order, including a schedule for discovery as described below.  *Id.* ¶¶37-40.

**D.**    **Brazilian Courts Deny CA's Request To Enjoin The Eldorado Bond Offering And Refer That Dispute To Arbitration**

In January 2019, while the parties were awaiting the constitution of the ICC Arbitral Tribunal, Eldorado Brasil began preparing to issue up to $500 million in new bonds ("Eldorado Bonds"), which were to be registered and listed in Singapore ("Eldorado Bond Offering").  Carneiro Decl. ¶45.  Capital raised in the Eldorado Bond Offering would help Eldorado Brasil replace its short-term debt which would benefit its overall operations.  *Id.* ¶44.

On February 7, 2019, CA initiated another action in the São Paulo court, seeking to enjoin the Eldorado Bond Offering, arguing that it contravened provisions of the SPA ("Brazilian Bond Injunction Action").  *Id.* ¶48.  On April 1, 2019, the Brazilian Appellate Court ultimately denied the injunction, allowed the Eldorado Bond Offering to proceed, and directed that any remaining disputes relating to this matter be resolved in the ICC Arbitration.  *Id.* ¶49.

**E.**    **CA Files Two Proceedings In Singapore That Are Now Moot and Subject to Mandatory Arbitration**

Meanwhile, on the same day the Brazilian Bond Injunction Action was filed, CA filed an *ex parte* claim in the High Court of the Singapore, seeking to enjoin the listing of the Eldorado

Bonds in the Singapore Exchange ("Singapore Injunction Action").  Carneiro Decl. ¶51; *cf.* SPA § 21.4.1 (preliminary injunction must be brought exclusively in the courts of São Paulo until constitution of arbitral tribunal).  Without reaching the merits, the Singapore High Court granted the injunction *ex parte* and on an interim basis.  Carneiro Decl. ¶52.

On March 15, 2019, CA initiated yet another Singapore proceeding arising out of the Eldorado Bond Offering, this time a shareholder derivative action against the directors of Eldorado Brasil, its majority shareholder J&F and its principals, Eldorado's independent auditor BDO RCS, and Eldorado Brasil (the "Singapore Derivative Action").  *Id.* ¶54.  Eldorado Brasil learned of CA's derivative suit when it was notified of this Section 1782 action.  *Id.* ¶55.

As of February 7, 2019, the Eldorado Bond Offering has been cancelled and will not proceed, *Id.* ¶48, thus mooting the Singapore Injunction Action and Singapore Derivative Action. *See* Leng Sun Decl. ¶88.

**F.      CA Seeks To Enjoin Bond Offering In The ICC Arbitration And Agrees to Case Management And Document Production Order**

On March 25, 2019, while the Singaporean proceedings were pending, CA sent a letter informing the ICC Tribunal of its intent to file interim measures applications in the arbitration to enjoin the Eldorado Bond Offering, reprising the allegations it made in its various other injunctive complaints that the bond offering would not be within the scope of the ordinary course of business and so would violate the SPA ("March 25 Letter").  Carneiro Decl. ¶38.  The March 25 Letter acknowledged the injunction proceedings commenced in Singapore, but did not foreshadow the Austrian Injunction Action.  *Id.*  On April 22, 2019, CA filed an application with the ICC Tribunal seeking those interim measures.  Briefing was completed on May 13, 2019 and the panel heard oral argument on May 25, 2019, but has yet to issue a ruling on CA's application.  *Id.* ¶¶40-43.

On April 17, 2019, the parties in the ICC Arbitration filed a joint application in which they agreed to an exchange of documents and evidence procedure in the arbitration. *Id.* ¶39.  On May 20, 2019, the ICC Arbitral Tribunal issued Procedural Order Number 1, where it ordered that discovery shall occur between September 27, 2019 and November 7, 2019 and be conducted in accordance with the International Bar Association Rules on the Taking of Evidence in International Arbitration ("IBA Evidence Rules").  *Id.* ¶42.

## G.    Despite Brazilian Orders Compelling Arbitration And Parties Taking Steps To Resolve Such Matters In Arbitration, CA Launches New Action In Austria

Undeterred by the previous Brazilian judicial decisions compelling arbitration, and after the parties had already agreed in the SPA to the exclusive resolution of disputes in the ICC Arbitration, on April 11, 2019, CA launched yet another *ex parte* action, this time in Austria (where one of the issuers of the Eldorado Bonds is located), seeking to enjoin the Eldorado Bond Offering ("Austrian Injunction Action").  Carneiro Decl. ¶56.  On May 7, 2019, after the court granted CA's *ex parte* application and Eldorado subsequently appealed, the Austrian court reversed course and suspended the injunction pending Eldorado's appeal, noting that the injunction could be incompatible with the parties' decision to resolve the bond offering dispute in the ICC Arbitration. Carneiro Decl., Ex. 16, at 3 (May 7, 2019 Decision of Austrian Court noting that "the parties must maintain the status quo until the decision of the arbitral tribunal at its instruction").

## H.    CA Files Section 1782 Applications Requesting Duplicative, Broad, And Privileged Discovery

On March 20, 2019—over six months after commencing the ICC Arbitration—CA filed this *ex parte* 1782 Application seeking permission to issue subpoenas for the production of documents relating to the Eldorado Bond Offering and SPA to White & Case, BDO USA, Fitch, and Moody's.  CA also sought information from BNY relating to certain Eldorado bonds that set to mature in 2021, but are not at issue in any of the foreign proceedings.  Carneiro Decl. ¶7.  On

March 21, 2019, this Court granted in part the *ex parte* Application.  ECF No. 8.  On April 18, 2019, this Court permitted Eldorado Brasil to intervene as of right.  ECF Nos. 11, 14.

On March 28, 2019, CA filed a second *ex parte* Section 1782 application in Connecticut against Eldorado USA Inc. (an Eldorado entity that played no part in the Eldorado Bond Offering or in any SPA-governed matter).[4]  Eldorado USA is concurrently filing an opposition to that application.  Finally, on April 2, 2019, CA filed a third *ex parte* Section 1782 application in Minnesota against U.S. Bank National Association seeking documents concerning the Eldorado Bond Offering and SPA.  Eldorado Brasil has also intervened in those proceedings.[5]

## ARGUMENT

### I.    Petitioner Fails to Satisfy the Statutory Requirements

To successfully invoke Section 1782, an applicant must establish that "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person."  *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)).  Petitioner fails to establish that the discovery is "for use in a foreign tribunal" and that the person from whom discovery is sought "resides (or is found)" in this district.

---

[4]  *In re CA Investment (Brazil) S.A.*, 3:19-mc-00038-JCH (D. Conn.), ECF No. 1.

[5]  *In re CA Investment (Brazil) S.A.*, 19-MC-00022(MJD/SER) (D. Minn.), ECF No. 15.

### 1.   The Evidence Is Not For Use In Foreign Tribunals

The foreign proceedings that underlie CA's Application do not qualify for assistance under Section 1782 because they are either for use in a private commercial arbitration, extinct, stayed, or moot.

### a.   The ICC Arbitration Is Not A Foreign Tribunal Under Section 1782

The Court should deny the Application because CA cannot show that the requested discovery is "for use in a proceeding before a foreign or international tribunal."  *See* 28 U.S.C. § 1782(a).  As CA concedes, the Second Circuit has held that the term "tribunal" excludes private commercial arbitral tribunals—particularly arbitral tribunals constituted under the ICC Rules— noting that a broader definition of the term would undermine arbitration's advantages by exposing arbitration participants to potentially extensive and expensive discovery procedures.  *See Nat'l Broad. Co. v. Bear Stearns & Co., Inc.,* 165 F.3d 184, 190 (2d Cir. 1999) ("If the parties to a private international arbitration make no provision for some degree of consensual discovery *inter se* in their agreement to arbitrate, the arbitrators control discovery, and neither party is deprived of its bargained-for efficient process by the other party's tactical use of discovery devices.").

*NBC* controls here.  In *NBC*, the Second Circuit held that a "private commercial arbitration administered by the International Chamber of Commerce" was not a "proceeding before a foreign or international tribunal" under Section 1782.  *NBC*, 165 F.3d at 186, 191; 28 U.S.C. § 1782(a). Section 1782's legislative history was dispositive: while Congress used the term "tribunal" to ensure that Section 1782 was "not confined to proceedings before conventional courts," it intended to limit the term's reach to cover "only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state."  *Id*. at 189 (internal quotation marks and citation omitted);  *see id*. at 190 ("[T]here is no indication that Congress intended for the new provisions to reach private international tribunals . . . .").  The

Second Circuit cemented that conclusion by noting that "[o]pening the door" to U.S.-style discovery in foreign or international arbitrations "would undermine one of the significant advantages of arbitration," namely "its asserted efficiency and cost-effectiveness." *Id.* at 190–91; *see also Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) ("Resort to § 1782 in the teeth of such arguments suggests a party's attempt to manipulate United States court processes for tactical advantage.  Section 1782 need not be construed to demand a result that thwarts private international arbitration's greatest benefits." (footnote omitted)); *Application of Medway Power Ltd.*, 985 F. Supp. 402, 403, 405 (S.D.N.Y. 1997) (denying Section 1782 application for use in a foreign private commercial arbitration, even though the arbitrator had requested the Section 1782 discovery, because private arbitral tribunals did not fall within the ambit of Section 1782 and because "Section 1782 was not enacted to create an end run for arbitrators.").[6]

CA contends that *NBC* does not apply because *dicta* from *Intel* suggests otherwise, citing a law review article footnote quoted in a parenthetical in *Intel* listing "arbitral tribunals" as one type of "tribunal" for purposes of Section 1782.  Mem. at 15; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004).  But *Intel* did not consider private commercial arbitrations. *Intel* involved a proceeding before the Directorate-General for Competition of the Commission of the European Communities—a public judicial agency that was part of the European Commission. *See id.* at 254–55, 257–58.  The parenthetical was thus aimed at establishing that the European

---

[6] The *NBC* court also noted that interpreting § 1782 to allow "such broad discovery in proceedings before 'foreign or international' private arbitrators would stand in stark contrast to the limited evidence gathering provided in [Section 7 of the Federal Arbitration Act ("FAA")] for proceedings before domestic arbitration panels."  165 F.3d at 191.  For example, Section 7 of the FAA explicitly confers discovery authority only upon *arbitrators;* by necessary implication, the *parties* to an arbitration may not employ this provision to subpoena documents or witnesses.  *See id.* at 187.

Commission, while exercising "quasi-judicial" or "investigating" powers, qualified as a "tribunal" under Section 1782, not whether arbitral tribunals did.  Nor did it express a view on whether the reference to "arbitral tribunals" in the parenthetical covered private arbitral tribunals or just governmental ones.  *See id.* at 257–58.[7]

The "post-*Intel*" case CA cites, *In re Kleimar N.V.*, 220 F. Supp. 3d 517 (S.D.N.Y. 2016)*,* is distinguishable because it presented the unique scenario where the arbitration would be subject to judicial review under both the rules of the arbitration and the applicable law.  In *Kleimar*, this court granted a Section 1782 application for use in a London Maritime Arbitrators Association ("LMAA"), citing *Ex rel Application of Winning (HK) Shipping Co. Ltd.,* No. 09-22659-MC, 2010 WL 1796579, at *9-10 (S.D. Fla. Apr. 30, 2010), which had held that an LMAA arbitration governed by English law qualified as a "foreign tribunal" under Section 1782 because the LMAA arbitral award would be subject to judicial review under both the LMAA rules and English law. 2010 WL 1796579, at *9-10.  *Winning* allowed Section 1782 assistance for LMAA arbitrations governed by English law based on the foreign award's judicial reviewability, which *Kleimar* cited with approval in finding the LMAA to be a foreign tribunal under Section 1782.  Here, however, the ICC Arbitration is being conducted under the ICC Arbitration Rules and subject to Brazilian law, neither of which permit judicial review of arbitral awards.  Yarshell Decl. ¶58.

Finally, other federal courts have followed *NBC.*  The Fifth Circuit—the only other circuit court to have considered this issue—has agreed with *NBC.  See Biederman*, 168 F.3d at 881

---

[7]   *See also In re Grupo Unidos Por El Canal, S.A.*, No. 14-MC-00226-MSK-KMT, 2015 WL 1810135, at *1 (D. Colo. Apr. 17, 2015) ("It is completely implausible that the Supreme Court would have, in a parenthetical quotation supporting an unrelated proposition involving an quasi-judicial governmental body, expanded § 1782 to permit discovery assistance in private arbitral proceedings and reverse the only two circuits addressing this issue *sub silentio,* without even acknowledging the existence of the circuit precedent.").

(applying *NBC* to hold that private commercial arbitration does not fall within the ambit of Section 1782).  Multiple district courts have explicitly found that an ICC arbitration does not qualify as a foreign tribunal under Section 1782.  *See*, *e.g.*, *In re China Petrochemical Dev. Corp.,* No. 3:17-CV-02138 (SRU), 2017 WL 10841339, at *2 (D. Conn. Nov. 28, 2017) (following *NBC* and holding that private arbitration under ICC rules does not satisfy Section 1782); *In re Operadora DB Mexico, S.A. de C.V.,* No. 609-CV-383-ORL-22GJK, 2009 WL 2423138, at *9–12 (M.D. Fla. Aug. 4, 2009) (holding that ICC arbitration does not fall within the meaning of "tribunal" under Section 1782 and noting that the ICC arbitration, whose authority stems from a private agreement, was distinguishable by the source of authority in *Intel* i.e. a state-sponsored mechanism to oversee antitrust disputes).  Given that a district court must follow Second Circuit precedent "unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit," *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (citation omitted), neither of which have occurred here, this Court should follow the controlling precedent of *NBC*.

### b.     The Brazilian Judicial Proceedings Are All Extinct

CA also purportedly seeks to use evidence obtained here in the "Brazilian Share Purchase Agreement Injunction and Brazilian Bond Injunction proceedings . . . before the courts in São Paulo, Brazil."  Mem. at 14.  Both proceedings, however, are now extinct, have been explicitly referred to the ICC Arbitration, Yarshell Decl. ¶¶20, 67, and are thus no longer "proceedings" for purposes of Section 1782.  Thus, any evidence obtained here cannot be "for use" in those extinct proceedings.  *See Certain Funds*, 798 F.3d at 120(to be "for use" the applicant must show that the materials "will be employed with some advantage or serve some use in the proceeding" (citation

omitted)); *In re King.com Ltd.*, No. 16-MC-80070-JCS, 2016 WL 4364286, at *1 (N.D. Cal. Aug. 16, 2016) (stayed foreign proceedings cannot form the basis of Section 1782 proceeding).

### c.   The Singaporean Proceedings Are Moot And In Any Event Subject To Mandatory Arbitration

Despite the Eldorado Bond Offering being cancelled on February 7, 2019, Carneiro Decl., ¶48, CA proceeded to file the Singapore Derivative Suit, the operative allegations of which all related to the Eldorado Bond Offering.  As the Eldorado Bonds will no longer be listed in Singapore, *Id.*, the Singapore Injunction Action and Singapore Derivative Suit are moot.  *See* Leng Sun Decl. ¶88; *In re Application of Grabski Inwestycje Finansowe Sp. z.o.o.*, No. M19-117, 2004 WL 1234046, at *1 (S.D.N.Y. June 2, 2004) (a foreign proceeding under Section 1782 means "a proceeding in which an adjudicative function is being exercised" (citation omitted)).  In any event, these allegations do not belong in Singapore but in the ICC Arbitration.  Yarshell Decl. ¶¶57, 64, 67 ("Under Brazilian law, the disputes underlying these additional foreign proceedings thus clearly fall within the scope of the arbitration clause of the SPA, and should therefore be resolved via arbitration in the ICC Arbitration"); Leng Sun Decl. ¶¶62-67 (arbitrability of Singaporean disputes depends on scope of arbitration clause under Brazilian law).  Indeed, CA has already sought injunctive relief relating to the Eldorado Bonds in the ICC Arbitration.  Carneiro Decl. ¶38-40; Yarshell Decl. ¶57.  The Singaporean proceedings therefore cannot form the basis of CA's 1782 Application as it is duplicative of, and indeed contravenes, the parties' agreed-upon dispute resolution agreement.  *See In re Pinchuk*, No. 14-CIV-20047, 2014 WL 1328484, at *1 (S.D. Fla. Mar. 31, 2014)  (denying Section 1782 application "[b]ecause the Motion provides evidence and credible arguments that the disputes in the Cyprus Petitions are referable to arbitration under shareholders' agreements").  To allow CA to obtain discovery for foreign proceedings designed to avoid contractual obligations would undermine the pro-arbitration policies of the United States,

Singapore, and Brazil.  *See* Leng Sun Decl. ¶54; Yarshell Decl. ¶64, 66; *see also infra* at 20-21 (allowing discovery here would undermine U.S. pro-arbitration policy).

> **d.    The Austrian Injunction Has Been Suspended**

The Austrian Injunction Action, filed after CA initiated these 1782 proceedings, has effectively been stayed since the Austrian court has suspended the injunction pending Eldorado's appeal.  Stayed foreign proceedings cannot constitute "foreign proceedings" for purposes of Section 1782.  *See In re King.com Ltd.*, 2016 WL 4364286, at *1, *8.  Nor can CA "use" any evidence obtained here in the appeal as Austrian law applies a strict prohibition (*Neuerungsverbot*) on the introduction of new evidence in appellate proceedings.  Rechberger Decl. ¶28, 52, 53.

Moreover, CA's attempt to bootstrap the Austrian Injunction Action in its 1782 Application is also inappropriate because a Section 1782 applicant cannot retroactively expand the scope of its application by adding a subsequently-initiated foreign proceeding as the statutory predicate for granting an application initially predicated on other foreign proceedings.  *Certain Funds*, 798 F.3d at 124 (considering "the facts as they were presented to the district court" and declining to consider import of later-filed action even though counsel brought it up at oral argument).[8]

> **2.    Respondents Are Not "Found" In This District**

The Order must be vacated because Eldorado Brasil, the real party in interest here, does not reside and is not found in New York.  Courts look not only to the ostensible recipients of a Section 1782 request, but also to the real parties in interest.  *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (finding that "when the real party from whom documents are sought" is involved in the foreign proceedings then it counsels against

---

[8]    This Court already rejected CA's attempt to issue "additional subpoenas" without further judicial scrutiny.  ECF No. 8, at 2 (striking item (2)(b)).

granting the application); *see Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district court was [a law firm], for all intents and purposes petitioners are seeking discovery from [the law firm's client], their opponent in [foreign] litigation.").  The same result follows here: since CA has served a Section 1782 Subpoena on the Subpoena Recipients solely to obtain documents and information that they received from Eldorado Brasil and its affiliates, "the real party from whom documents are sought" is Eldorado Brasil.  *See Kiobel*, 895 F.3d at 245.[9]  Eldorado Brasil, a company incorporated in Brazil and based in São Paulo, is not "found" in this District for purposes of Section 1782.  *See* Carneiro Decl. ¶10.

As an independent ground for vacatur of the Order, the Subpoena as to BDO USA should be quashed because BDO USA does not reside nor is not found in New York under Section 1782. As CA concedes, Mem. at 13-14, multiple New York courts have held that to "'reside' or be 'found' in a district for purposes of §1782, a corporate entity must at the very least be subject to the court's general jurisdiction under [*Daimler AG v. Bauman*, 571 U.S. 117 (2014)]."  *In re Sargeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017); *see also In re Godfrey*, 526 F. Supp.2d 417, 422 (S.D.N.Y. 2007) (applicants did not satisfy Section 1782 when "the corporation was neither incorporated nor headquartered" in New York); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 452-56 (S.D.N.Y. 2018) (applying *Daimler* to find that some respondents were not "found" in district when neither

---

[9]  The Subpoenas request documents that ultimately belong to Eldorado Brasil or information that was purportedly supplied by Eldorado Brasil.  For example, the subpoenas to White & Case and BDO USA seek "all financial statements and reports . . . for *Eldorado*."  ECF No. 1-2 at 6 (emphasis added).  The subpoena to Bank of New York Mellon seeks discovery on "the reports and information provided [by *Eldorado* to the Bank] as Trustee, in relation to the bonds maturing in 2021."  ECF No. 1-4 at 5 (emphasis added).  And the subpoenas to Moody's and Fitch seek "[a]ll documents concerning the Proposed Bond Offering . . . (including any documents concerning *Eldorado's* assets, debts, income, expenses, and finances)."  ECF No. 1-5 at 6; ECF No. 1-6 at 6 (emphasis added).

incorporated, headquartered or otherwise "at home" there).  Just like Eldorado Brasil, BDO USA is neither incorporated nor is headquartered in New York, and thus CA does not satisfy this most basic statutory requirement.  Carneiro Decl. ¶6 & Exs. 1-2 (BDO website and corporations search).

## II.     The *Intel* Factors Weigh Heavily in Favor of Vacating the Order and Quashing the Subpoenas

Even if the three statutory requirements are met, this Court has discretion to deny the Section 1782 request and quash the Subpoenas.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  In exercising its discretion, a court must consider "the 'twin aims' of Section 1782: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  *Kiobel*, 895 F.3d at 244  (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)).  Courts have also considered four "non-exclusive" factors to determine whether a court should exercise its discretion to grant a Section 1782 request.  *See Intel*, 542 U.S. at 264–65; *see Kiobel*, 895 F.3d at 244.  Each of these discretionary factors weighs against CA's 1782 Application and in favor of vacating the Order and quashing the Subpoenas.

### 1.      *Intel* Factor 1: Evidence Is Already Within The Jurisdiction Of Foreign Tribunals

"[A] district court is not required to grant a [Section] 1782 discovery application simply because it has the authority to do so[,]" and instead should exercise discretion and consider, among other factors, "[w]hether *the documents* or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent [Section] 1782 aid[.]"  *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (emphasis added) (citation omitted).  The Supreme Court has explained that the "need for § 1782(a) aid generally is not as apparent" when the subpoena targets are parties to the foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.

The driving question is therefore whether the "evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 264.

Here, although the Subpoena Recipients are not parties to the foreign proceedings, the Subpoenas are primarily aimed at the discovery of information purportedly supplied by Eldorado Brasil.  That means that, for all practical purposes, the Subpoenas seek information from Eldorado Brasil—a named party to all of the foreign proceedings underlying CA's 1782 Application.  This weighs against allowing the Application as the evidence may be obtainable "absent Section 1782(a) aid."  *See id.*; Yarshell Decl. ¶¶41-47 (CA can seek to obtain discovery from Eldorado Brasil in the ICC Arbitration and has already agreed to a discovery schedule); Leng Sun Decl. ¶¶77-79 (party to a Singaporean proceeding can seek discovery from other parties); *see In re OOO Promnefstroy,* No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) ("Because the Court concludes that nearly all of the documents that the subpoena seeks are also in the possession of parties to the foreign proceeding, the first factor weighs squarely in favor of [denying the application]"); *In re Microsoft Corp.*, 428 F. Supp. 2d at 194 (granting motion to quash Section 1782 subpoena because the documents sought by the applicant were "within the [foreign tribunal]'s reach," even though the subpoena recipients were not participants in the foreign proceeding); *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) ("[A] district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" (internal quotation omitted)).

Further, allowing CA to obtain the same type of evidence from third parties here would undermine the twin policy aims of Section 1782 as it would be inefficient for CA to seek discovery from third parties of documents belonging to its party opponent, particularly when CA has already taken steps to organize the production of documents in the ICC Arbitration.  *See*, *e.g.*, Carneiro

Decl. ¶¶39, 42; Yarshell Decl. ¶¶48-49;  *see In re RSM Prod. Corp.*, No. 17-mc-213, 2018 WL 1229705, at *4 (S.D.N.Y. Mar. 9, 2018) ("[A]lthough [respondent] is not a participant in the foreign proceeding, it would be a poor exercise of discretion in these circumstances to assist an Israeli court by providing discovery from an Israeli resident whose documents are within the Israeli court's jurisdiction.").[10]

### 2.    *Intel* Factor 2: Foreign Tribunals Will Not Be Receptive To Evidence Obtained Here

Contrary to CA's assertions, the foreign tribunals will not be receptive to any evidence obtained here.  For starters, CA wholly fails to plead whether the ICC Arbitral Tribunal would be receptive to any Section 1782 evidence.  Rather, CA focuses on the receptivity of the "Brazilian courts" and "Singaporean courts."  Mem. at 16-18.  However, the Brazilian courts will not be receptive to any new evidence as the proceedings have been closed and referred to arbitration. Yarshell Decl. ¶¶32, 37.  Further, CA has already agreed to a discovery schedule in the ICC Arbitration and based on the opinion of Professor Yarshell, a leading Brazilian law professor, arbitrator, and former judge, "[w]hen the evidence can be gathered directly from a party opponent [in the arbitration] in Brazil, there is no reason for seeking the same evidence abroad."  *See* Yarshell Decl. ¶49.  As the Singaporean proceedings are a mere attempt to circumvent CA's obligation to arbitrate with the already-commenced ICC arbitration, it is unlikely that a Singaporean court will be receptive to any evidence obtained under the pretext of using it in such proceedings.  *See* Leng Sun Decl. ¶68 (Singaporean court will not be receptive to evidence where proceeding is stayed due to arbitration clause).  And since the Eldorado Bonds will no longer be

---

[10]  CA may also be able to obtain discovery from the Subpoena Recipients here through the foreign proceedings.  *See* Yarshell Decl. ¶46 (a party to an ICC arbitration can request discovery from third parties); Leng Sun Decl. ¶77-79 (party to Singaporean actions can request discovery from third parties abroad).

listed in Singapore, Carneiro Decl. ¶48, it is unlikely that a Singaporean court will find any use for information concerning a mooted dispute.  *See* Leng Sun Decl. ¶88.  Finally, Austrian courts will not be receptive to any evidence obtained here because CA would not be able to introduce such evidence in the Austrian proceeding, and in any event such fishing expeditions are expressly forbidden under Austrian procedural law.  Rechberger Decl. ¶28, 30, 36-40, 52-54.[11]

### 3. *Intel* Factor 3: The Application Seeks To Circumvent Both Foreign And U.S. Laws And Policies

The third *Intel* factor considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  This includes circumventing an arbitral tribunal's procedures for obtaining evidence.  *See In re Caratube Int'l Oil Co., LLP,* 730 F. Supp. 2d 101, 107–08 (D.D.C. 2010) (holding that Respondent "side-step[ped]" its obligations under the IBA Evidence Rules by seeking Section 1782 discovery from third parties without leave of the tribunal); *Aventis Pharma v. Wyeth,* No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y Nov. 6, 2009) (quashing subpoenas where petitioners' "motion [was] clearly an attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties in the choice of forum . . . clause.").

Here, CA's attempt to obtain discovery in the United States is an end-run around the ICC Arbitral Tribunal's jurisdiction to control discovery in the arbitral proceedings.  Further, CA has failed to obtain the ICC Arbitral Tribunal's permission to file its Section 1782 applications.  Yarshell Decl. ¶56; *see also* IBA Evidence Rules, Article 3.9 (a party needs to obtain the arbitral tribunal's leave before seeking discovery from third parties).  Allowing CA to obtain discovery

---

[11]   The document requests in the Subpoenas qualify as "fishing expeditions" under Austrian procedural law because they do not specify the documents being requested, but rather seek "any documents related to" a specific subject matter.  Rechberger Decl. ¶¶39, 40, 54.

here would have the effect of circumventing not only the ICC Arbitral Tribunal's authority to control discovery in the arbitration but also the Brazilian courts' decisions referring all disputes to arbitration.  Yarshell Decl. ¶¶61, 64, 66; *id.* ¶¶26, 55 (under SPA, any discovery in aid of the arbitration sought prior to arbitral tribunal constitution must be brought in São Paulo court, and in ICC Arbitral Tribunal thereafter).  It would "pit[]" this Court against the Brazilian courts and the ICC Arbitral Tribunal, "rather than fostering cooperation between them, and would violate principles of comity." *In re Microsoft Corp.*, 428 F. Supp. 2d at 196  (citing *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir. 1997)); *see In re Kreke*, 2013 WL 5966916, at *6 ("It would create a perverse system of incentives—one counter to the efficiency and comity goals of Section 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority." (footnote omitted)).

Finally, the Singaporean and Austrian proceedings cannot provide a basis for Section 1782 discovery as those proceedings are duplicative of the claims already pending in the ICC Arbitration or as ordered for arbitration by Brazilian courts.  SPA, § 21.4.1 (providing that any action seeking injunctive relief shall be brought *exclusively* in the courts of Sao Paulo, Brazil).  To allow CA to obtain discovery for use in the Singaporean and Austrian proceedings would have the effect of turning a blind eye to those jurisdictions' pro-arbitration policy and the parties' forum selection agreement.  *See* Leng Sun Decl. ¶54; Rechberger Decl. ¶44, 56; *see also* Yarshell Decl. ¶57-66.[12]

Similarly, CA's resort to Section 1782 discovery also contravenes the U.S.'s pro-arbitration public policy.  The U.S. federal policy in favor of arbitration is animated by the desire

---

[12]   Eldorado Brasil would benefit from enforcement of the relevant arbitration agreements, as would CA.  Further, third-parties who worked in good faith with Eldorado in connection with the abandoned bond issuance, should not be roped needlessly into a dispute as to which they are tangentially related at best.

"to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); Federal Arbitration Act, 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable"). Allowing parties like CA, who agreed in the SPA to the exclusive resolution of disputes via the ICC Arbitration and respect the contours of document production procedure determined by the arbitral tribunal in Procedural Order No. 1, to later use Section 1782 as their discovery mechanism of first resort to unleash U.S.-style discovery, both undermines the federal policy favoring arbitration and abrogates the right of arbitral bodies, such as the ICC Arbitral Tribunal, to establish procedures in their proceedings.

**4.      *Intel* Factor 4: The Application Is Overly Intrusive And Burdensome**

Finally, the discovery sought is unduly burdensome and intrusive. Under the Federal Rules of Civil Procedure, which are incorporated by reference in Section 1782, district courts "*must* limit the frequency or extent of discovery . . . if it determines that the . . . discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); 28 U.S.C. § 1782(a). Under the guise of lodging only a "single document request" for each Subpoena Recipient, CA's Subpoenas request expansive discovery including "*All documents* concerning the Proposed Bond Offering, Offering Memoranda, and Share Purchase Agreement." ECF Nos. 1-2 to 1-6 (emphasis added). Yet CA already possesses many of the documents it now seeks: it already has the SPA and Offering Memorandum ("OM"), both of which form the basis for its foreign actions. Passos Decl. ¶¶7-11, 20. To the extent the Subpoenas call for each respondent to reproduce the SPA or OM, or documents that the Subpoena Recipients received from Eldorado itself, that request is facially cumulative and should be denied.

21

The Subpoenas also seek privileged and confidential information supplied directly by Eldorado Brasil, all of which are inappropriate for discovery.   Under the Federal Rules of Civil Procedure, the district court where compliance with a subpoena is required *must* quash or modify a subpoena that either "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(ii-iv); 28 U.S.C. § 1782(a).  The subpoenas to White & Case (Eldorado Brasil's counsel in the Eldorado Bond Offering) and BDO USA request privileged and confidential business information with their broad request for "*all* financial statements and reports, including balance sheets, cash flow statements, and profit/loss statements, for Eldorado."  ECF No. 1-2 (White & Case); ECF No. 1-3 (BDO).  Similarly, the subpoenas to Fitch and Moody request "documents concerning *Eldorado's* assets, debts, income, expenses, and finances," ECF No. 1-5 (Moody's); ECF No. 1-6 (Fitch), all of which would have come from Eldorado Brasil.[13]

Further, CA has not met its burden of explaining the requested material's relevance to the foreign proceedings.  *See*, *e.g.*, *In re Asia Mar. Pac. Ltd.,* 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) ("[D]iscovery is 'for use' in a foreign proceeding if it is relevant to the subject matter of the proceeding, and the evidence would 'increase the applicant's chances of success' in the proceeding." (emphasis added) (quoting *Mees*, 793 F.3d at 291)).  CA has not explained the relevance of its document request to BNY, who acts as trustee for certain bonds expiring in 2021, which are not the subject of any of the foreign proceedings.  Carneiro Decl. ¶7.  Without any

---

[13]   Moody's and Fitch's document would also be subject to journalist's privilege.  A ratings agency gathering information for its ratings can invoke the journalists' privilege.  *See In re Pan Am Corp.*, 161 B.R. 577, 581-82(S.D.N.Y. 1993) (finding S&P was entitled to invoke journalist's privilege); *see also In re Scott Paper Co. Sec. Litig.*, 145 F.R.D. 366, 372 (E.D. Pa. 1992) (same).  Likewise because Moody's and Fitch engaged in newsgathering to prepare financial ratings on Eldorado Brasil for the Eldorado Bond Offering, they cannot be compelled to produce information about their sources and are entitled to invoke the reporter's privilege.

explanation for their relevance or connection to the foreign proceedings, the Subpoena to BNY should therefore be quashed. *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (denying application Section 1782 requests as unduly burdensome "where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for *irrelevant information*" (emphasis added)).

## III.   The Subpoenas Should Be Quashed And Order Vacated Because The Application Was Made In Bad Faith And To Harass Eldorado Brasil

CA's Application should not be allowed because it was filed in bad faith and for the purpose of harassing Eldorado Brasil. "[I]f the district court determines that a party's discovery application under Section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto." *In re Apotex Inc.*, No. M12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (granting motion to quash and vacating grant of discovery application under section 1782 where the requested discovery would require the party from whom it was sought "to devote substantial resources to perform onerous searches and then review voluminous documents for a potentially small subset of [documents]." (citation omitted)); *In re Grynberg*, 223 F. Supp. 3d 197, 200–02 (S.D.N.Y. 2017) (denying application where petitioner "launched an international front in his litigation crusade" as an attempt to circumvent prior adverse discovery orders). CA, having agreed to arbitrate any disagreement arising out of the SPA, has now repeatedly sought to use Section 1782 to expand its ability to take discovery beyond what would be available in the ICC Arbitration. As such, this Court should not allow CA to move outside the arbitration it agreed to use to resolve the disputes here. *See, e.g.*, *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 595 (7th Cir. 2011) ("[W]atch out for . . . a party's effort to combine the substantive law of a foreign country with the

expansive discovery opportunities available in the United States – a clue would be that the plaintiff had sued in an inconvenient forum while seeking discovery in the United States.").[14]

CA's Subpoenas should also be quashed because they seek evidence available elsewhere, chiefly in the ICC Arbitration.  *See Metallgesellschaft*, 121 F.3d at 79 ("[I]f it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative or was brought vexatiously." (citations omitted)); *cf. In re RSM Prod. Corp.*, 2018 WL 1229705, at *3 (denying Section 1782 request as "duplicative, vexatious, and brought in bad faith" where petitioners "ha[d] already sought documents regarding the same set of transactions" in another Section 1782 proceeding); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d at 705 (S.D.N.Y. 2015) (denying Section 1782 request as "an overly broad fishing expedition that does nothing to further the twin aims of the statute").[15]

CA's attempt to take discovery from White & Case—Eldorado Brasil's counsel—also raises major policy concerns.  Allowing parties to take discovery from law firms, even of non-privileged materials, would undermine the attorney-client relationship by increasing the risk that foreign clients would be less willing to "disclose . . .  pertinent documents to U.S. counsel," which

---

[14]   Since the Singaporean and Austrian actions will likely be dismissed, CA should not be allowed to base its 1782 Application on frivolous or moot foreign proceedings. *See* Rechberger Decl. ¶¶41-51 (explaining why appeal of Austrian injunction will prevail); Leng Sun Decl. ¶88.

[15]   *See also Brandi-Dohrn*, 673 F.3d at 81 ("Our cases acknowledge that a district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment."); *In re Accent Delight Int'l Ltd.*, Nos. 16-MC-125 (JMF), 18-MC-50 (JMF), 2018 WL 2849724, at *4 n.2 (S.D.N.Y. June 11, 2018) ("[A] district court may deny an application suspected to be a mere 'fishing expedition' or a tool for harassment." (citation omitted)); *In re IPC Do Nordeste, LTDA*, No. 12-50624, 2012 WL 4448886, at *9 (E.D. Mich. Sept. 25, 2012) (finding the 1782 application "unreasonably cumulative or duplicative" where petitioner was seeking the same evidence in the 1782 from a subsidiary as from the parent company in a Brazilian court).

in turn would result in "bad legal advice to the client, and harm to our system of litigation," which favors "full and frank communication between attorneys and their clients."  *See Kiobel*, 895 F.3d at 247 (citation omitted);[16] *see also In re Hulley Enters*., 358 F. Supp. 3d 331, 353 (S.D.N.Y 2019) ("If American courts entertain applications to obtain client documents  . . . from American law firms with foreign offices, it will discourage foreign clients from engaging the foreign office of an American law firm for fear that American courts would order production of documents and depositions of attorneys that not might not be ordered by the country where the client is located."). A similar chilling effect would occur, by degree, if providing documents to a foreign auditor (BDO RCS Brasil) exposes the company to U.S.-style discovery through a Section 1782 application filed against the auditor's U.S. affiliate (BDO USA).[17]

## CONCLUSION

Eldorado Brasil respectfully requests that the Court vacate the Order and quash the Subpoenas.

---

[16] As here, the applicant in *Kiobel* sought discovery nominally from Cravath, but really from Royal Dutch Shell, her adversary in the foreign proceedings. *Id.* at 245 ("[W]hen the real party from whom documents are sought (here, Shell) is involved in [the] foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company.").

[17]   The disclosure of privileged information in this proceeding would conflict with the ICC Arbitral Tribunal's jurisdiction under Brazilian law to decide privilege and confidentiality issues.  *See* Yarshell Decl. ¶¶51-54.

Dated:  June 3, 2019          Respectfully submitted,

/s/ Michael B. Carlinsky

Michael B. Carlinsky
Lucas V.M. Bento
Alexander Wentworth-Ping
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
lucasbento@quinnemanuel.com
alexwentworthping@quinnemanuel.com

*Attorneys for Intervenor Eldorado Brasil Celulose S.A.*